UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SYSTEM1 RESEARCH LIMITED and SYSTEM1 RESEARCH INC.,

       Plaintiffs,

– against –

SYSTEM1 LLC,

       Defendant.

**OPINION AND ORDER**
21 Civ. 8029 (ER)

---

Ramos, D.J.:

On September 27, 2021, System1 Research Limited ("Research Limited") and System1 Research Inc. ("Research Inc.") (together, "Plaintiffs") filed this action against System1 LLC, alleging that Defendant is using the name SYSTEM1 in violation of federal and New York trademark law. Pending before the Court is Defendant's January 14, 2022 motion to dismiss for failure to state a claim. Doc. 22. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND[1]

### a. Plaintiffs' and Defendant's Services

Research Limited, a multinational company headquartered in the United Kingdom, and Research Inc., its United States-based subsidiary, draw upon proprietary market research and principles of behavioral science to offer a range of advertising, branding, and market research services to some of the largest corporations throughout the world. ¶¶ 1–2, 8–9. Because of its

---

[1] The following facts are based on the allegations in the complaint, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Unless otherwise noted, citations to "¶ __" refer to the complaint, Doc. 1.

innovative solutions, Research Limited—itself and through its various affiliates, including Research Inc.— has developed a reputation as a thought leader within the industry.  ¶¶ 8, 13.

Since 2006, Research Limited has provided all of its marketing and advertising-related services under the SYSTEM1 mark, or under names that prominently feature the SYSTEM1 mark (e.g., SYSTEM1, SYSTEM1 RESEARCH, SYSTEM1 RESEARCH LIMITED, SYSTEM1 MARKETING, and SYSTEM1 AD RATINGS) (the "SYSTEM1 Marks").  ¶¶ 10–11.  Under the SYSTEM1 Marks, Research Limited has promoted its services in the United States and abroad.[2]  ¶¶ 8, 14.  Research Limited uses the SYSTEM1 Marks extensively on its website, www.system1ResearchLimted.com, on Twitter and Instagram (under the handle @System1Research), and on its LinkedIn page, entitled System1 Research.[3]  ¶ 15.  Research Limited's website describes itself as a world leader in "improving brand effectiveness," "[b]rand equity[,] and [n]ew [p]roduct [i]nnovation," "provid[ing customers with] the most predictive metrics and richest diagnostics."  See Doc. 23-1 at 4–5.  Plaintiffs' service can cost from hundreds to thousands of dollars depending on the service a customer purchases.  See Docs. 23-

---

[2] In addition to the United Kingdom and the United States, Research Limited operates offices in Switzerland, Germany, the Netherlands, France, Brazil, Singapore, Australia, and China.  ¶ 8.

[3] A court ruling on a motion to dismiss may properly consider documents subject to judicial notice under Federal Rule of Evidence 201(b).  *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, LP*, No. 13 Civ. 1654 (RA), 2014 WL 2610608, at *15 n.16 (S.D.N.Y. June 10, 2014) (judicially noticed matters may be considered on a motion to dismiss because they are "not considered matters outside the pleadings") (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008)).  A fact is judicially noticeable if it is "not subject to reasonable dispute because it:  (1) is generally known within the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Additionally, in considering a motion to dismiss under Rule 12(b)(6), a district court can consider documents attached to the complaint as exhibits and documents incorporated by reference in the complaint.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  For a document to be incorporated by reference, "the complaint must make 'a clear, definite, and substantial reference to the document[].'"  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)).  Because Plaintiffs' website is publicly available and is incorporated in the complaint, the Court—per Defendant's request, *see* Doc. 24—takes judicial notice of Plaintiffs' website.

3; 23-4.  The SYSTEM1 Marks have become well-known, distinctive designations of the goods and services offered by Plaintiffs.  ¶¶ 14, 17.

At some point *after* Plaintiffs began using the SYSTEM1 Marks, Defendant, then known as OpenMail LLC, changed its name to System1 LLC.[4]  ¶ 29.  Under the name System1 LLC, Defendant offers advertising, marketing, and branding services throughout the United States.  ¶¶ 30–31.  According to the Press Release, Defendant is a

> leading omnichannel customer acquisition platform [that has] developed a propriety end-to-end responsive acquisition marketing platform . . . which the [c]ompany uses to acquire . . . customers on behalf of its advertising partners and its own products.  The [c]ompany operates a portfolio of over 40 digital properties that help over 120 [million] monthly visitors navigate their everyday lives and include, among others, MapQuest, Startpage, HowStuffWorks, Info.com, and CarsGenius.

Doc. 23-6 at 4.  According to its website, www.system1.com, Defendant's business involves using algorithms and machine learning (through a propriety platform it calls "RAMP") to acquire online customers on behalf of advertising partners.[5]  *See* Doc. 23-9.  Defendant includes Google, Bing, and Yahoo among its "longstanding" partners.  *See id.*

Defendant uses the handle @system1co on Facebook and Twitter and maintains a LinkedIn page entitled "System1."  ¶ 45.

### b.  The U.S. Trademark Applications and Correspondence

---

[4] Although the complaint does not specify the date when Defendant changed its name to System1 LLC, a press release (the "Press Release") attached to the complaint, dated June 29, 2021, provides additional information about Defendant.  *See* Doc. 1-6.  Plaintiffs' copy of the Press Release, however, omits certain relevant parts of it. Defendant therefore asks the Court to take judicial notice of a more complete copy of the Press Release that it has attached to its memorandum in support of its motion to dismiss.  *See* Doc. 23-6.  Because Defendant's more complete article is publicly available and is incorporated in the complaint, the Court takes notice of it.  The Press Release provides that Defendant founded System1 LLC in 2013.  Doc. 23-6 at 4.

[5] Defendant describes itself as a company that "build[s] powerful brands across multiple customer [markets] . . . and deliver[s] high-intent customers to [its] advertising partners" through use of its "best-in-class technology."  *See* Doc. 23-8.

3

At some point prior to April 24, 2017, Research Limited applied to the United States Patent and Trademark Office (the "USPTO") to federally register the SYSTEM1 RESEARCH mark.[6] On February 6, 2017, Research Limited applied to the USPTO to federally register the SYSTEM1 GROUP mark for use in a broad range of branding, advertising, and market research-related services. *See* Doc. 1-5 at 2; *see also* Doc. 1-2. Two months later, on April 24, 2017, Defendant filed an application with the USPTO to register the SYSTEM1 mark for use in connection with:

> computer software and software applications for the purposes of web optimization and the provision of personalized internet content based on individual's internet use; computer software to enable the creation, managing, targeting, tracking, analyzing, and servicing of advertising and marketing content and campaigns via mobile, web sites, online and interactive media and computer networks.

¶ 32. On December 26, 2017, the USPTO issued Research Limited a registration for the SYSTEM1 RESEARCH mark for use in a variety of marketing, branding, and research-related services. *See* Doc. 1-1.

Some time after registration of SYSTEM1 RESEARCH—but before February 16, 2018, when the USPTO refused Defendant's application—Research Limited sent the USPTO a letter protesting Defendant's application to register SYSTEM1 (the "Letter of Protest").[7] The Letter of Protest argued that a likelihood of confusion exists between Research Limited's registered SYSTEM1 RESEARCH mark (along with its then-under review SYSTEM1 GROUP mark), and Defendant's then-pending SYSTEM1 mark. *See* Doc. 1-5. Research Limited also asserted that

---

[6] The record before the Court does not indicate when Research Limited filed its application with the USPTO to register SYSTEM1 RESEARCH. The complaint provides only that Defendant submitted its SYSTEM1 application "well after" Research Limited filed its application for SYSTEM1 RESEARCH. ¶ 32.

[7] The record before the Court also does not specify a date for the Letter of Protest. The Letter of Protest, however, describes Research Limited's SYSTEM1 RESEARCH mark as already registered, and the complaint states the USPTO considered the Letter of Protest as part of its review of Defendant's application. *See* Doc. 1-5; ¶ 32.

4

because it already owned the SYSTEM1 RESEARCH mark—and because it filed its application for SYSTEM1 GROUP *before* Defendant submitted its application for SYSTEM1—the USPTO should deny Defendant's application.[8] *Id.*

On February 16, 2018, the USPTO sent an email to Defendant (the "First Office Action"),[9] refusing its application due to "a possible likelihood" with three registered marks, including Research Limited's SYSTEM1 RESEARCH mark.[10] *See* Doc. 26-1 at 2–6. The two other marks referenced in the First Office Action are "ONE SYSTEM" and "ONE 1 SYSTEM." *See* Doc. 26-2 at 2. In comparing SYSTEM1 to SYSTEM1 RESEARCH, the USPTO explained:

> [Research Limited's and Defendant's] marks are similar in appearance, sound, connotation, and overall common commercial impression in that they each contain the wording "SYSTEM1" . . . . [Defendant]'s goods are related to the services of [Plaintiffs] in that [Defendant]'s computer software (which enables the creation, managing, targeting, tracking, analyzing, and servicing of advertising and marketing content and campaigns) could reasonably be used in the performance of [Research Limited's] advertising and marketing services. Purchasers could reasonably believe that the parties' related goods and services come from a common source since they are both used in the advertising and marketing fields. Given the identicalness in part of the parties' marks and the relatedness of the parties' goods and services, the examining attorney finds that there is a substantial likelihood that the same purchasers could mistakenly believe that the parties' goods and services come from a common source.

*Id.* at 3. The First Office Action also gave Defendant actual notice of Research Limited's use of the SYSTEM1 RESEARCH mark. ¶ 38.

---

[8] The Letter of Protest also states that Research Limited's SYSTEM1 GROUP "[a]pplication [had been] . . . provisionally refused based on a possible likelihood with [Defendant's application. T]hat provisional refusal . . . was[, however,] withdrawn after it was explained to the examining attorney that [Research Limited's a]pplication ha[d] an earlier effective filing date." Doc. 1-5.

[9] The Court takes judicial notice of the First Office Action, which is attached to Plaintiffs' opposition to Defendant's motion, as it is incorporated by reference in the complaint.

[10] The USPTO's First Office Action is dated February 16, 2018. *See* Doc. 26-1. The Declaration of Felica Boyd, however, describes this First Office Action as dated March 21, 2018. *See* Doc. 26 ¶¶ 3–4. And Defendant's response to the First Office Action states that the USPTO sent it on March 1, 2018. *See* Doc. 26-2 at 2. The Court finds no reference to either of these March dates anywhere in the First Office Action.

Four months later, on June 12, 2018, the USPTO approved Research Limited's application to register SYSTEM1 GROUP.  See Doc. 1-2.

Three months later, on September 4, 2018, Defendant responded to the First Office Action.[11]  See Doc. 26-2.  It argued that "[n]o likelihood of confusion exists" between its applied-for SYSTEM1 mark and Research Limited's registered SYSTEM1 RESEARCH mark, emphasizing the:

> [(1)] dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression[; (2)] dissimilarity of the goods or services[; (3)] dissimilarity of established, likely-to-continue trade channels[; (4)] conditions under which and consumers to whom services are provided[; (5)] number and nature of similar marks in use on similar services; [(6) absence of] instances of confusion among consumers.

Doc. 26-2 at 2, 4–5.

Ultimately, however, the USPTO was not persuaded by Defendant's arguments, and on October 2, 2018, it refused Defendant's application for the second time via another email (the "Second Office Action").[12]  See Doc. 26-3 at 3.  The Second Office Action explained that the "examining attorney [had] carefully considered [Defendant's] arguments in support of the registration of its mark, but . . . that there [was still] a substantial likelihood that the same purchasers could mistakenly believe that the parties 'goods and/or services come from the same common source."  Id.  According to the USPTO, Defendant's sought-after SYSTEM1 mark bore too many similarities with both Research Limited's SYSTEM1 RESEARCH mark and newly registered SYSTEM1 GROUP mark to grant its application.

---

[11] The Court takes judicial notice of Defendant's response to the First Office Action, which is attached to Plaintiffs' opposition to Defendant's motion, as it is incorporated by reference in the complaint.

[12] The Court takes judicial notice of the Second Office Action, which is attached to Plaintiffs' opposition to Defendant's motion, as it is incorporated by reference in the complaint.

> Although applicant's mark does not contain the entirety of the wording in the registered marks, applicant's mark is likely to appear to prospective purchasers as a shortened form of registrant's marks, especially since the registrant has consistently used the term SYSTEM1 in both of its marks *See In re Mighty Leaf Tea*, 601 F.3d 1342, 1348, 94 USPQ2d 1257, 1260 (Fed. Cir. 2010) (quoting *United States Shoe Corp.*, 229 USPQ707, 709 (TTAB 1985)).  Merely omitting some of the wording from the registered marks does not overcome a likelihood of confusion between the parties' marks. *See In re Mighty Leaf Tea*, 601 F.3d 1342, 94 USPQ2d 1257; *In re Optica Int'l* , 196 USPQ 775, 778 (TTAB 1977); TMEP §1207.01(b)(ii)-(iii).  The applicant's mark does not create a distinct commercial impression from the registered marks because it contains the same dominant wording and does not add any additional wording that would distinguish it from those marks. The applicant's mark is identical in part to the registrant's marks. Furthermore, the additional wording in the registered marks is less significant in distinguishing the parties' marks since it is descriptive of the registrant's services.

Doc. 26-3 at 3–4.  The Second Office Action also compared Research Limited's goods and services with those of Defendant.  It concluded:

> Both the applicant's software and the registrant's services function in the field of advertising and marketing.  Specifically, consumers who purchase the applicant's computer software to enable the creation, managing, targeting, tracking, analyzing, and servicing of advertising and marketing content and campaigns could reasonably believe that this software bearing the mark SYSTEM1 comes from the same source as the registrant's advertising and marketing services bearing the partial mark SYSTEM1.  The additional wording in the registered marks could reasonably be seen as designating companion services to the applicant's goods since they all function in the same field.  Furthermore, the applicant's goods could reasonably be utilized in the performance of the registrant's advertising, marketing, and promotional services.  Given the strong similarity of the parties' marks and the relatedness of the parties 'goods and services, the examining attorney finds that there is a substantial likelihood that the same purchasers could mistakenly believe that the parties' goods and services come from a common source.

*Id.* at 5.  The Second Office Action further found that Research Limited and Defendant occupy similar channels of trade (e.g., the internet) and that "even if consumers of the compared goods and/or services could be considered sophisticated and discriminating, even sophisticated purchasers are not immune from source confusion, especially in cases such as the present one involving identical marks and related goods and/or services." *Id.* at 6–7 (internal quotation

7

marks and citations omitted). Ultimately, on April 30, 2019, Defendant abandoned its application seeking to federally register SYSTEM1.[13] ¶ 35.

On October 1, 2019, the USPTO approved two more trademark applications made by Research Limited: for SYSTEM1 AD RATINGS and SYSTEM1 MARKETING.[14]

### c. Defendant's Continued Misuse

In June 2021, a U.S.-based Special Purpose Acquisition Company, Trebia Acquisition Corporation, publicly announced its intent to acquire Defendant; the name of the enlarged company upon closing was to be System1 Group Inc.[15] *See* Doc. 23-6. On July 14, 2021, after learning of the reported acquisition of Defendant by Trebia and its plans to continue using "SYSTEM1," Plaintiffs sent Defendant a cease-and-desist letter. ¶ 57; Doc. 1-7. However, Defendant continues to promote and sell its products and services as SYSTEM1. ¶ 58.

## II.   PROCEDURAL HISTORY

On September 27, 2021, Plaintiffs filed the instant action: (1) seeking to enjoin Defendant from using the "SYSTEM1" trademark (or any other trademark confusingly similar to the SYSTEM1 Marks); (2) asking the Court to order Defendant to turn over to Plaintiffs all products that reflect the SYSTEM1 Marks or any "confusingly similar" marks for destruction; and (3) bringing claims for trademark infringement, false designation, and unfair competition pursuant to the Lanham Act, trademark infringement and unfair competition under New York

---

[13] Defendant experienced a similar outcome when it attempted to register the SYSTEM1 mark in the European Union. On October 20, 2017, Defendant filed a European Union Trademark application to register SYSTEM1. ¶ 40. On May 11, 2018, Research Limited filed an opposition against Defendant's EU SYSTEM1 application on the grounds that registering Defendant's mark would likely cause customer confusion or detriment the distinctiveness of Research Limited's already registered SYSTEM1 RESEARCH mark. ¶ 41. On November 24, 2020, the EU Intellectual Property Office upheld Plaintiffs' opposition and denied Defendant's application. ¶ 42.

[14] The record before the Court does not specify when Research Limited applied to register SYSTEM1 AD RATINGS or SYSTEM1 MARKETING.

[15] According to Defendant's memorandum in response to Plaintiffs' opposition, the merger has since been completed, and the company has adopted the name "System1, Inc." *See* Doc. 30 at 8 n.6.

common law, and deceptive business acts and unjust enrichment pursuant to New York General Business Law ("GBL") §§ 349(h) and 133. Doc. 1. Pending before the Court is Defendant's January 14, 2022 motion to dismiss the complaint in its entirety. Doc. 21.

## III.   LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court is not required, however, to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## IV.   DISCUSSION

### a.   Trademark Infringement and Unfair Competition

#### i.   Standard

To withstand a Rule 12(b)(6) motion to dismiss, claims for trademark infringement, false designation, or unfair competition must plausibly allege that the defendant's use of the mark is likely to cause consumers confusion as to the origin, sponsorship, or approval of the defendant's goods or services. *Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 417 (2d Cir. 2018); *Savin Corp. v. Savin Grp.,* 391 F.3d 439, 456 (2d Cir. 2004). "To prove confusion, a plaintiff may show that the public believed 'the owner of the mark actually produced the item and placed it on the market,' or that the public believed 'the mark's owner sponsored or otherwise approved the use of the trademark.'" *Hamilton International Ltd. v. Vortic LLC*, 13 F.4th 264, 272 (2d Cir. 2021) (quoting *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 383–84 (2d Cir. 2005)).

To determine whether there is a likelihood of confusion, courts in this Circuit consider a list of eight factors. *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016) (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).[16] "These so-called *Polaroid* factors are: (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the reciprocal of defendant's good faith in adopting its own mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers." *Hamilton*, 13 F.4th 264 at 272 (citing *Polaroid Corp.*, 287 F.2d at 495) (internal quotation marks omitted).

---

[16] Claims for trademark infringement or unfair competition under New York common law—which Plaintiffs here bring—also require a showing of likelihood of confusion; courts employ a substantially similar standard in analyzing the question of likelihood of confusion for such claims. *See, e.g.*, *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) (Under New York law, "the elements necessary to prevail on causes of action for trademark infringement and unfair competition . . . mirror the Lanham Act claims") (internal quotation marks and citation omitted).

10

A plaintiff is not, however, required to address the *Polaroid* factors in its complaint, as "such a requirement would be inconsistent with the notice pleading philosophy of the Federal Rules of Civil Procedure." *LBF Travel, Inc. v. Fareportal, Inc.*, No. 13 Civ. 9143 (LAK) (GWG), 2014 WL 5671853, at *8 (S.D.N.Y. Nov 5, 2014) (internal quotation marks and citation omitted).

Additionally, no one factor is dispositive. Consumer confusion analysis is highly fact-intensive and does not "ordinarily . . . lend itself to a motion to dismiss." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 449 (S.D.N.Y. 2014) (citing *Deere & Co. v. MTD Prods, Inc.,* No. 00 Civ. 5936 (LMM), 2011 WL 435613, at *1 (S.D.N.Y. Apr. 30, 2001) (noting that likelihood of confusion is not an appropriate inquiry on a motion to dismiss because the court must accept the allegations in the complaint as true). Therefore, "[a] motion to dismiss will be granted for failure to plead likelihood of confusion only if no reasonable factfinder could find a likelihood of confusion on any set of facts that plaintiff could prove." *LBF Travel, Inc.*, 2014 WL 5671853, at *8 (internal quotation marks and citation omitted).

"[A] district court must resolve the issue of likelihood of confusion 'not by reference to a registration determination by the [US]PTO but by application of the multi-factor balancing test set forth in *Polaroid*.'" *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, 440 F. Supp. 2d 249, 274 n.24 (S.D.N.Y. 2006) (citing *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 744 (2d Cir. 1994)). "[I]t is appropriate[, however,] to 'accord weight' to an initial determination of a [US]PTO examiner[.]" *Id.* (citing *Genesee Brewing Co. v. Stroh Brewing Co.,* 124 F.3d 137, 148 n. 11 (2d Cir. 1997); *Arrow Fastener Co. v. Stanley Works,* 59 F.3d 384, 392 (2d Cir. 1995)). Indeed, some courts have awarded "*great* deference . . . to the [US]PTO's decisions." *See, e.g.*, *M & G Electronics Sales Corp. v. Sony Kabushiki Kaisha*, 250 F. Supp. 2d

91, 98 (E.D.N.Y. 2003); *Murphy Door Bed Co., Inc. v. Interior Sleep Systems, Inc.*, 874 F.2d 95, 101 (2d Cir. 1989) (stating that "the decision of the [US]PTO is to be accorded great weight"); *Schutte Bagclosures v. Kwik Lok Corporation*, 193 F. Supp. 3d 245, 258–59 (S.D.N.Y. 2016) (same).

### ii. Application of *Polaroid* Factors

Defendant argues that because there is no likelihood of customer confusion between its SYSTEM1 services and products and those of Plaintiffs, the Court should dismiss Plaintiffs' federal and common law trademark infringement claims.

The first *Polaroid* factor instructs the Court to consider the strength of Plaintiffs' mark. Defendant, however, concedes the strength of Research Limited's mark and does not move to dismiss the complaint on this ground. *See* Doc. 30 at 7, n.1.

The second *Polaroid* factor concerns the similarity of the marks. "In assessing similarity, courts look to the 'overall impression created by the [marks] and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers." *Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 294 (S.D.N.Y. 2012) (quoting *Gruner + Jahr USA Pub. V. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993)). The

> "test of confusion is not[, however,] whether the products can be differentiated when [subject to] . . . side-by-side comparison. Instead, [courts] must ask whether they create the same general overall impression such that a consumer who has seen [one] . . . would, upon later seeing the [other,] . . . be confused."

*Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993 (2d. Cir. 1997) (citing *American Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103, 107 (2d Cir. 1978) (finding side-by- side test inapplicable in trademark context)). "If the appearance of the marks is similar enough that it may confuse consumers who do not have both marks before them but who have a general, vague, or even hazy, impression or recollection of the other party's mark, there may still

be similarity." *Bonilla v. H&M Hennes & Mauritz L.P.*, No. 12 Civ. 6919 (LAK) (MHD), 2014 WL 12661621, at *10 (S.D.N.Y. Apr. 16, 2014) (quoting *Lebewohl*, 890 F. Supp. 2d at 294) (internal quotation marks omitted).

Defendant argues that their mark is not sufficiently similar enough to Plaintiffs' mark to cause a likelihood of confusion, highlighting certain aesthetic differences between each company's presentation of the word SYSTEM1. On Plaintiffs' website, SYSTEM1 is displayed in white text against a bright pink background in a traditional, Serif-styled font. Moreover, the first letter in SYSTEM1 is capitalized and the remaining letters are lowercased. Plaintiffs' mark also includes the followings words beneath SYSTEM1: "The Ad Effectiveness Agency." *See* Doc. 23-1 at 3. Meanwhile, on Defendant's website, SYSTEM1 appears in mostly white text against a dark grey background in a more modern font. Additionally, the whole term is capitalized; there is no text below SYSTEM1; and the last letter, "M," is partially colored blue. Doc. 23-8 at 3.

However, even if the presentation of the marks differs, the letters making up the marks (i.e., S, Y, S, T, E, M, and 1) are *identical*. By operating under an identical name, consumers may well attribute Plaintiffs' products or services to Defendant, and vice versa. Indeed, courts have found objectively more dissimilar marks similar. In *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, for example, the court found "unpersuasive any notion that the two marks[, Morningside Group Limited and Morningside Capital Group, L.L.C.,] are dissimilar" since "[o]ne word stands out as dominant in the two names, and that—the only arbitrary word—is 'Morningside.'" 182 F.3d 133, 140 (2d Cir. 1999). Here, SYSTEM1 is not merely dominant in the parties' marks; it is the full name in dispute. Accordingly, "[c]onsidering

the general impression created by the marks," the Court finds that Plaintiffs have set forth a strong showing of similarity.[17]  *Id.*

The third *Polaroid* factor concerns the proximity of products.  "This inquiry focuses on whether and to what extent the two products compete with each other."  *Lebewohl*, 890 F. Supp. 2d at 294 (internal citation omitted).  If the companies operate in "different market spaces and target different consumers with different products [] or services," consumer confusion is unlikely.  *OffWhite Productions, LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 565 (S.D.N.Y. 2020).  "Courts examine the nature of the products themselves and the structure of the relevant market, including the class of customers to whom the goods are sold, the manner in which they are advertised, and the channels through which they are sold."  *Lebewohl*, 890 F. Supp. 2d at 294–95 (quoting *Vitarroz v. Borden Inc.,* 644 F.2d 960, 967 (2d Cir. 1981)) (internal quotation marks omitted).

Plaintiffs contend that even if their and Defendant's services are not *identical*, they are *proximate* in that they both offer services that help clients better market their products online.  Plaintiffs do so mostly by way of conducting market research and drawing upon principles of behavioral science.  Defendant, on the other hand, does so via "an internet-based customer acquisition technology platform[.]"  *See* Doc. 22 at 10; Doc. 23-9.  RAMP uses algorithms and machine learning to acquire online customers on behalf of advertising partners, based on third-party users interacting with online ads.  *See id.*  Because of the differences between these services, Defendant argues that the parties are not competitors and do not occupy proximate spaces.

---

[17] The Court notes that the USPTO's Second Office Action also found similarity.  *See* Doc. 26-3 at 5.

The Court disagrees. To be sure, offering closely related services is a sign of competition; but competition can still exist when that is *not* the case. Here, although the parties' services may differ in nature, Plaintiffs have made a showing that the parties offer services in the *same* industry (online marketing) to a *similar* customer base (online marketers) to achieve the *same* ends for their clients (customer acquisition). At this stage of litigation, that is sufficient to consider the parties competitors, such that a reasonable consumer encountering both of their services could attribute them to a singular source.[18]

The remaining factors weigh in favor of Defendant.[19] Plaintiffs plead no evidence of actual consumer confusion. Although evidence of actual confusion is not required to prove a likelihood of confusion, "it is certainly proper for the trial judge to infer from the absence of actual confusion that there was also no likelihood of confusion." *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1136 (2d Cir. 1979). Though non-dispositive (particularly at this stage), this factor weighs in favor of Defendant.

The sixth factor considers "whether the defendant adopted its mark with intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991) (internal quotation marks and citation omitted). When a plaintiff offers only conclusory

---

[18] Relatedly, the Court also notes that Defendant, in its application for the SYSTEM1 trademark, applied to use the mark, at least in part, to develop "computer software to enable the creation, managing, targeting, tracking, analyzing, and servicing of advertising and marketing content[.]" ¶ 32. Defendant's EU SYSTEM1 application applied for similarly broad use in the marketing-services, consumer-acquisition industry. Courts have considered applications for such broad uses in deciding proximity. *See, e.g.*, *Uber Inc. v. Uber Techs., Inc.*, 521 F. Supp. 3d 455, 465 (S.D.N.Y. 2021) (finding that a defendant's USPTO application "that express[ed] broad ambitions for [] advertising services, and not just advertisements displayed on vehicles . . . lend[s] plausibility to plaintiff's claim . . . [of] competitive proximity."). Accordingly, the broad consumer acquisition and marketing-centric focus of Defendant's application further weighs in favor of a finding of proximity.

[19] The fourth *Polaroid* factor concerns the likelihood of whether the prior owner (i.e., Plaintiffs) will "bridge the gap." Having already found that Plaintiffs have made a reasonable showing of proximity, the Court need not address this factor. *Lopez v. Nike, Inc.*, No. 20 Civ. 905 (PGG) (JLC), 2021 WL 128574, at *9 (S.D.N.Y. Jan. 14, 2021) (finding no gap to bridge when the parties' products were already in competitive proximity).

allegations of bad faith, this factor weighs in favor of defendant. *See Lopez*, 2021 WL 128574, at *11.

Plaintiffs allege, based on the fact that Defendant had actual knowledge of Plaintiffs' superior rights, that Defendant used and continued to use the SYSTEM1 mark as part of a bad-faith scheme to confuse and deceive consumers. ¶¶ 38, 70. Further, Plaintiffs allege Defendant adopted and used SYSTEM1 in furtherance of a willful, deliberate, and bad-faith scheme to trade upon the extensive consumer goodwill, reputation, fame, and commercial success of products and services that Plaintiffs offer in connection with the registered SYSTEM1 Marks. ¶ 71.

However, "prior knowledge of a senior user's mark does not, without more, create an inference of bad faith." *Playtex Products, Inc.*, 390 F.3d 158, 166 (2d Cir. 2004). Defendant argues that Plaintiffs alleged no facts that Defendant acted in bad faith and the references to bad faith are simply legal conclusions. *See* Doc. 22 at 21. Defendant claims it did not adopt the SYSTEM1 name to trade on Plaintiffs' "goodwill, reputation, fame, and commercial success," but, rather, adopted the name to call to mind a term used by Nobel laureate Daniel Kahneman regarding a mode of thought which is fast, automatic and frequent. *Id*. Absent more concrete allegations of bad faith, the Court finds that this factor weighs in favor of Defendant.

The seventh factor, the quality of the respective products, "is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Arrow Fastener Co., Inc. v. Stanley Works,* 59 F.3d 384, 398 (2d Cir. 1995). Plaintiffs allege in its opposition that Defendant provides reasonably high-quality advertising and marketing services and that when two companies offer a similar quality of products or services, consumers are more likely to be confused. *See* Doc. 25 at 31. Plaintiffs do not, however, allege this in the complaint. Courts have found that when a plaintiff has not

alleged a low-quality product, this factor favors the defendant. *See, e.g.*, *Lopez*, 2020 WL 2539116, at *12 (dismissing complaint, finding this factor favored defendant because "[p]laintiff nowhere in the TAC suggests that [defendant] has a low-quality product"). Absent any allegation in the complaint with respect to quality, the Court finds that this factor favors Defendant.

Lastly, the factor of consumer sophistication "recognizes that the likelihood of confusion between the products depends in part on the sophistication of the relevant purchasers." *Lebewohl*, 890 F. Supp. 2d at 296 (internal quotation marks and citation omitted). The more sophisticated the purchaser, the lower the likelihood of confusion. *Flushing Bank v. Green Dot Corp.*, 138 F. Supp. 3d 561, 591–92. Buyer sophistication indicates that a discriminating purchaser will examine the product or service carefully, dispelling any initial questions as to the origin or association of the product. *Id*. at 592. A product or service's high price can also suggest customer sophistication. *See, e.g.*, *Star Indus., Inc.*, 412 F.3d at 390 (explaining that "in some cases a court is entitled to reach a conclusion about consumer sophistication based solely on the nature of the product or its price" and concluding that "[u]nhurried consumers in the relaxed environment of the liquor store, making decisions about $12 to $24 purchases, may be expected to exhibit sufficient sophistication to distinguish between Star's and Bacardi's products, which are differently labeled").

Plaintiffs claim to work with many of the world's largest buyers of advertising and market research, and the costs of its services range from hundreds to thousands of dollars. ¶ 9; *see* Docs. 23-3; 23-4. Defendant similarly purports to work with "advertising partners [seeking to build] powerful brands across multiple consumer [markets]," and describes Google, Bing, and Yahoo as some of its "longstanding" partners. *See* Docs. 23-8; 23-9. Defendant argues that

17

large, corporate customers tend to be more discerning about those they do business with and are less likely to be confused by the parties' uses of SYSTEM1.  Defendant also contends that the price point for Plaintiffs' services also suggests consumer sophistication.  In response, Plaintiffs argue that even sophisticated customers make mistakes about the identities of the companies that they work with (citing *Morningside Group*, 182 F.3d at 143).  While that may be true, the Court nonetheless finds that this factor cuts in favor of Defendant.

In summary, the first three factors weigh in favor of Plaintiffs, and the remaining factors weigh in favor of Defendant.  As noted however, consumer confusion analysis is highly fact-intensive and does not "ordinarily lend itself to a motion to dismiss." *Transcience Corp.*, 50 F. Supp. 3d at 449.  Because of the strength of Plaintiffs' brand, the striking similarity of the marks, and the fact that the parties target a similar consumer base in a similar industry to help clients with the same problem, the Court finds that Plaintiffs have adequately pleaded consumer confusion.  Accordingly, Defendant's motion to dismiss Plaintiffs' federal and state common law trademark infringement claims is denied.

    b.  **Deceptive Business Acts and Practices**

A plaintiff challenging an act or practice under GBL § 349 must show that the act or practice was misleading in a material respect and consumer injury or harm to the public interest even for claims brought by a commercial claimant. *Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*, 2009 WL 4857605, at *7 (S.D.N.Y. Dec. 14, 2009).  Such harm to the public interest must be "generally based on potential danger to the public health or safety." *Id.* at *7–8.

The majority view in this Circuit is "that trademark or trade dress infringement claims are not cognizable under [§ 349] unless there is a specific and substantial injury to the public interest

over and above ordinary trademark infringement or dilution." *RCA Trademark Management S.A.S. v. VOXX International Corporation*, No. 14 Civ. 6294 (LTS) (HBP), 2015 WL 5008762, at *4 (S.D.N.Y. Aug. 24, 2015) (internal quotation marks and citations omitted). Accordingly, Defendant argues that Plaintiffs' allegation of customer confusion does not—without more—rise to the level of harm required to sustain this claim.

Plaintiffs concede that most courts in this Circuit have adopted the approach stated in *RCA Trademark Management*. *See* Doc. 25 at 31. However, Plaintiffs nonetheless ask the Court to apply a more lenient standard set forth in *Steinway, Inc. v. Ashley*, No. 01 Civ. 9703 (GEL), 2002 WL 122929, at *2 (S.D.N.Y. Jan. 29, 2002). There, the court allowed a § 349 claim to go forward based only on allegations that using a mark "[was] likely to deceive or cause confusion as to the affiliation or association of [defendants'] customers with [p]laintiffs." *See* Doc. 25 at 31. Plaintiffs, however, cite no other case that has adopted this approach.

In light of the scarce case law in support of the *Steinway* method—and the great weight of cases supporting the majority approach—the Court finds that ordinary confusion does not amount to a substantial injury to the public interest under § 349. Because Plaintiffs have not alleged any such injury, Defendant's motion to dismiss is granted with respect to this claim.

### c. Leave to Amend

Plaintiffs request leave to amend the complaint to address any deficiencies found by the Court. *See* Doc. 25 at 31–32. Federal Rule of Civil Procedure 15 instructs courts to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New*

*York*, 579 F.3d 176, 183 (2d Cir. 2009)). In *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, the Second Circuit reaffirmed the "liberal spirit" of Rule 15 and counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. 797 F.3d 160, at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (per curiam)). An amendment is futile and should not be granted if it "fails to cure prior deficiencies." *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (quotation and citation omitted).

The Court finds that a valid claim might yet be stated for the § 349 claim. Accordingly, the Court grants Plaintiffs leave to amend no later than October 14, 2022.

## V.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED in part and GRANTED in part. The Clerk of Court is respectfully directed to terminate the motions, Doc. 21 and 32.

It is SO ORDERED.

Dated:     September 29, 2022
           New York, New York

                                                    Edgardo Ramos, U.S.D.J.